OSCAR C. S. DAVIES *vs.* EASTERN STEAMBOAT COMPANY.

Kennebec.　Opinion November 26, 1900.

*Common Carrier.　Agent.　Telegram.　Shipping.*

The court will not infer, as matter of law, the authority of the captain of a passenger steamer, to charge the owner with the duty of delivering telegrams addressed to its passengers.

Such authority is a question of fact, to be established by evidence.

In the absence of any evidence tending to prove that it is a part of the business habit or custom of the defendant, a common carrier of passengers by water to receive telegrams for delivery to its passengers; or that it knew or permitted this to be done by its officers, servants or agents, the defendant is not liable for the non-delivery of a telegram addressed to a passenger on board its steamer and by direction of the captain accepted by the purser for delivery

On Exceptions by Plaintiff.

Action on the case against a steamboat company, as a common carrier of passengers, for damages arising from the non-delivery of a telegram.    The case was tried to a jury who returned a verdict for the defendant, and the plaintiff took exceptions to the ruling of the presiding justice.

The case is sufficiently stated in the opinion.

*Joseph Williamson, Jr., and L. A. Burleigh,* for plaintiff.

In this case Wentworth, the addressee of the telegram, was a fare-paying passenger, and as such the defendant company owed him all the duties and assumed toward him all the obligations of a common carrier of passengers.    He was the agent or servant of the plaintiff, traveling on the plaintiff's business, and the plaintiff's money eventually paid for his trip on the steamer of the defendant company.    The telegram in question related to the business for which he was employed and for which he was traveling, and its non-delivery to him, the agent or servant, resulted in damage to his principal or master, the plaintiff in this case.    For a breach, therefore, of the carrier's duty toward the servant while so engaged in the master's business, the breach being in relation to a matter directly connected with that business and resulting in damage therein to the master, and to the master alone, the carrier is responsible to the master.    It is held, for instance, that where a third party wrongfully prevents the agent from the performance of his duties as agent, the principal, if his interests are injured by such wrongful act, may recover from the third party to the extent of his loss caused by such injury.    1 Am. & Eng. Encly. of Law, (2d ed.) 1179–1180;  *St. Johnsbury, etc., R. R. Co.* v. *Hunt,* 55 Vt. 570, (45 Am. Rep. 639).    If the acceptance of this telegram be assumed to create a bailment, and it be further assumed that such bailment was gratuitous, both of which propositions we dispute, the defendant company was a mandatary, and must "exhibit diligence appropriate to what it undertook."    16 Am. & Eng. Ency. p. 398 et seq. (ordinary care).    Thompson on Negligence, p. 50. "A mandatary, whether with or without pay, who accepts and

undertakes to perform a trust or mandate, must exhibit diligence appropriate to what he undertakes." He also defines a mandatary as "a person who receives goods to perform some act without compensation in relation to them." And see Encly. supra: "In some conditions and relations a high degree of care is required, and failure to observe that care is called 'slight negligence,' while it should be observed that the high degree required only furnishes the test as to what will constitute ordinary care under the circumstances. The same is true when only a slight or a moderate degree of care is required."

This proposition is the equivalent of Wharton's rule of "diligence appropriate to what is undertaken." Now what degree of diligence is appropriate to the undertaking, by a common carrier, of delivering a telegraphic message directed to one of its passengers? A telegram, unlike a bale of hay, from its very nature implies importance, the necessity of haste, of prompt delivery. Doubtless at least one-half of all telegraphic messages come as a surprise to the receiver. There is no right to assume that the addressee will call for it, or that he knows anything about it. The only thing that the sending of the telegram implies is, that the sender knows the course of travel of the addressee. In other words, even on the assumption of a gratuitous bailment, the degree of care required, from the nature of the circumstances, is a high one and failure to observe that care would be actionable negligence. But the charge was "that the defendant would be required to use slight diligence only."

Counsel cited: *Bacon* v. *Casco Bay Steamboat Co.*, 90 Maine, 46; *Palmer* v. *Penobscot Lumbering Association*, 90 Maine, 193.

This case is governed by the law regulating the carriage of passengers. What were the duties and obligations of the defendant towards his passenger in relation to this telegram? The telegram was directed to the boat, for a passenger on the boat, was offered to the captain and by his direction was delivered to the purser, who could easily find the addressee in the usual round of his duties while collecting fares and tickets. Observe, in passing, that if the captain had declined to receive the telegram, the plaintiff would

doubtless have been promptly notified of that fact, and would have had a chance to take any other measures possible to prevent loss. But the telegram was accepted. Now what authority had the captain, as such, to accept a telegram for a passenger?

The captain of a steamer is the supreme authority while on board his vessel. So far as the management of his boat and the treatment and care of passengers is concerned he has, while on the trip, absolutely no superior. His word is law. He is theoretically and practically the corporation itself. *Ardesco Oil Co.* v. *Gibson*, 63 Pa. St. (13 P. F. Smith,) 146; Hutchinson on Carriers, §§ 629, 631, 632; *Farmer's & Mechanic's Bank* v. *Champlain Trans. Co.*, 23 Vt. 186, (56 Am. Dec. 68).

"Where the particular act is done in furtherance of the general purpose of the carrier, and is within the scope of the servant's authority, the carrier is liable even though the act be a trespass." 2 Am. & Eng. Enc. Law, (1st ed.) 754; *Moore* v. *Fitchburg R. R. Corp.* 4 Gray, 465; *Holmes* v. *Wakefield*, 12 Allen, 580; *Coleman* v. *N. Y. & N. H. R. R. Co.*, 106 Mass. 160.

In the case of *Finley* v. *Hudson Electric R. R. Co.*, 64 Hun, 373, it is laid down that "the root of the master's liability for the servant's act is his consent, express or implied, and when his acts are done within the scope of his employment, or for his master's benefit or in the furtherance of his interest, although not strictly in the line of his duty, yet in the course of his employment, the master's assent is implied and he is accordingly held liable."

The acceptance of that telegram for a passenger was clearly incidental to the business of carrying passengers. A common carrier is bound to use all such reasonable precautions as human judgment and foresight are capable of to make his passenger's journey safe and comfortable. *Edwards* v. *Lord*, 49 Maine 279; *Knight* v. *P. S. & P. R. R. Co.*, 56 Maine, 234.

It is by no means necessary to rest this case on the proposition that the carrier was bound to accept this telegram. There are many acts which a carrier is not, perhaps, bound to perform for its passengers, but which it may do in the general prosecution of its

business or safe, comfortable and convenient carriage; and having so undertaken, it is obliged to perform those acts with care. It is not, for instance, obliged to furnish camp-stools, but if it does furnish them, they must be reasonably well adapted to their purpose. Slight care in their selection and preservation would not answer: "Gross negligence" would not be the test. They must use due care according to the circumstances. Hutchinson, § 515.

*John Scott*, for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

POWERS, J. This is an action against a common carrier of passengers by water to recover damages resulting from the non-delivery of a telegraphic message directed to "G. L. Wentworth, Str. to Boothbay, Bath, Maine." Wentworth was a carpenter employed by the plaintiff to go from Augusta via Bath to Isle of Springs, and there build a cottage. The message directed a change in the building, and was offered by the telegraph company to the captain of the defendant's steamer, upon which Wentworth was a fare-paying passenger, and by direction of the captain it was delivered to the purser of the same steamer. The case was tried in the Superior Court of Kennebec county, resulting in a verdict for defendant, and the plaintiff excepts to the instruction to the jury, that the defendant would be required to use slight diligence only in endeavoring to deliver the telegram, and would be liable only for gross negligence for failure to deliver it to the proper party.

The defendant sets up, that in directing the telegram to be delivered to the purser, the captain acted in excess of his authority, and outside of the scope of his employment and of the business in which he was engaged, and that, therefore, the defendant itself never received the telegram or became charged with the duty of its delivery.

The nature and scope of the defendant's business, whether the particular act was necessary for its successful prosecution, the

usual and ordinary course of its management by those engaged in it at the time and place where it was carried on, were questions of fact for the jury to be determined from all the circumstances of the case; and from them it was for the jury to say whether the act in question was within the authority of the agent or the scope of the business of the principal which he was employed to transact. The court cannot infer, as matter of law, the authority of the captain of a passenger steamboat to charge the owners with the duty of delivering telegrams to its passengers. It is a matter of fact, to be established by evidence and found by the jury. The exceptions fail to show that any evidence was offered in this case which would warrant such a finding.

The defendant was a common carrier of passengers by water. Its contract resulting from the relation of carrier and passenger, nothing else appearing, was to transport its passenger safely and with proper regard for his comfort and convenience, together with such articles and money as might be properly contained in the baggage which he brought with him. The exceptions show no express contract with the passenger for more than this, and nothing from which more can be implied. They utterly fail to show that it was any part of the defendant's business, habit, or custom to accept telegrams for delivery to its passengers, or that it knew or permitted this to be done by its officers, servants, or agents. In general the business of common carriers of passengers on our inland waters, and that of receiving and delivering telegrams, are entirely separate and distinct, and the latter is in no proper and legal sense incidental to or connected with the former. Common carriers of passengers make no charge for such a service, and its very responsible duties and burdens should not be imposed upon them without their consent unless some rule of public policy requires it.

We cannot infer that it is necessary for the safety, comfort, or even convenience of the passenger that the duty of the delivery of a telegram addressed to him should be gratuitously imposed upon the passenger carrier. The telegraph company to whom the message has been intrusted is engaged in that business, and has the equipment and servants specially trained for carrying it on. For

an adequate consideration it has entered into an express contract to deliver the message, and usually knows its contents, importance, and urgency. In discharging that duty it may select its own means and agents, and is responsible for any neglect on their part. The defendant, therefore, owed no contractual duty to its passenger to receive and deliver the telegram. It does not appear that it was a part of its business or incidental thereto. If not, it necessarily follows, nothing else appearing in the case, that the act of the captain of the defendant's steamboat was outside of the scope of the business in which he was engaged, and not connected with the service which he had been employed to perform. For such acts the defendant is not. liable unless it held the captain out to the world as having authority, and the case is barren of any such showing. *Bowler* v. *O'Connell*, 162 Mass. 320.

It is true, as urged by the plaintiff, that the captain is the general agent of the owners, but a general agent is not an unlimited agent. His authority is necessarily restricted to the transactions and concerns within the scope of the business of the principal. Am. & Eng. Encyl. of Law, 2 Ed. Vol. 1, page 990. To bind his principal he must act within the usual and ordinary scope of the business he is employed to transact; his authority is measured by the usual extent of his employment. 1 Parsons on Contracts, p. 41. A shipmaster is a limited agent and can only bind the owners by contracts relative to the usual employment of the ship and means requisite to that employment. KENT, J., in *Leonard* v. *Lord*, 52 Maine, 389. The principal is liable for the authorized act of his agent because it is his own act, and for the acts of his agent within the scope of the authority which he holds him out as having, or knowingly permits him to assume, because to permit him to deny it would be to permit him to commit a fraud upon innocent persons. Am. & Eng. Encyl. of Law, 2d Ed. Vol. 1, Page 990.

In the case at bar no habit or custom is shown, no holding out to the world of the captain as having authority to do the particular act. It was his own act and not that of his principal. The defendant itself never received the telegram and never became charged with the duty of its delivery, and it is therefore unnecessary to consider

the instruction given as to the degree of diligence to which the defendant was bound, or the degree of negligence for which it would be liable.

*Exceptions overruled.*